ESTATE OF Kelly S. SPRY, Deceased,
Joanne Spry, Administratrix,
Appellant–Plaintiff,

v.

Ruth A. BATEY and Gold & Polansky,
Chartered, Appellees–Defendants.

No. 20A04–0306–CV–268.

Court of Appeals of Indiana.

March 4, 2004.

Rehearing Denied May 13, 2004.

Patrick J. Higgins, Jr., Granger, IN,
Attorney for Appellant.

Eric D. Johnson, Kightlinger & Gray, Indianapolis, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Judge.

Joanne Spry as administratrix of the Estate of Kelly S. Spry (the "Estate") appeals the trial court's grant of summary judgment to Ruth A. Batey and Gold & Polansky, Chartered (collectively, "Attorneys"). The Estate raises one issue, which we restate as whether the trial court erred by concluding that the statute of limitations had run on the Estate's legal malpractice claim against Attorneys. We affirm.

The relevant facts designated by the parties follow. On August 23, 1997, Kelly Spry left the Leiters Ford Tavern in a car driven by John W. Taylor. Taylor's car left the road, and Kelly was killed in the ensuing accident. James Spry was appointed as administrator of the Estate, and Ruth Batey of Gold & Polansky, Chartered, was retained to represent the Estate. The Estate entered into a settlement agreement with Taylor's insurance carrier on May 11, 1999 and signed a release of liability that contained the following pertinent language:

> I/we do hereby release and forever discharge JOHN W. TAYLOR, JR. and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigned, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I/we may hereafter sustain in consequence of an accident that occurred on or about the 23RD day of AUGUST, in the year 1997, at or near ROCHESTER, IN.

Appellant's Appendix at 9.

On August 5, 1999, Joanne Spry was substituted as administratrix of the Estate, and Joanne hired a new attorney to represent the Estate. The Estate then initiated a cause of action against the Leiters Ford Tavern and its owners (collectively, the "Tavern"). After obtaining a copy of the release signed by the Estate when it settled its claim against Taylor, the attorney for the Tavern demanded that the Estate dismiss its claim against the Tavern because the general release also released the Estates' claim against the Tavern. On June 1, 2000, the Estate's attorney sent a letter to Batey informing her of the Tavern's demand for dismissal based upon release. In the letter, the Estate's attorney stated:

> It is in the Estate's best interest that we address this matter directly and quickly. We feel that [the Tavern's counsel's] demand for dismissal is appropriate and should be done in light of the current Indiana laws on releases. This action will deprive the dependents and Estate of their claim against the tavern and its owners. Please contact us or have your attorney or insurance carriers contact us as soon as possible so that we can discuss this matter.

*Id.* at 34–35. On the same day, Gold & Polansky responded that it did not believe that the release benefited the Tavern and that it did not believe the case against the Tavern should be voluntarily dismissed. In October 2000, counsel for Attorneys sent a letter to counsel for the Estate detailing legal theories and arguments supporting the argument that the release did not apply to the Tavern.

The Estate continued to litigate its claim against the Tavern, and the Tavern filed a motion for summary judgment based upon

the release, which the trial court granted on November 13, 2000. The trial court found that the release applied to the Estate's claim against the Tavern. This court affirmed the trial court's judgment on appeal. *See Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269 (Ind.Ct.App. 2001), *reh'g denied.*

On September 5, 2002, nearly two years after the trial court granted summary judgment to the Tavern and two years and two months after the Estate notified Attorneys of the effect of the release, the Estate filed a complaint against Attorneys alleging legal malpractice due to their alleged failure to competently advise the Estate regarding the release. Attorneys filed a motion for summary judgment, arguing that the Estate's claim was barred by the statute of limitations. Specifically, Attorneys argued that the Estate was aware of its claim against Attorneys on June 1, 2000. However, according to Attorneys, the Estate did not file its complaint against Attorneys until September 5, 2002, which was at least three months beyond the two-year statute of limitations for attorney malpractice claims. In response, the Estate argued that the statute of limitations did not begin to run until the trial court granted the Tavern's motion for summary judgment in November 2000. The trial court granted summary judgment to Attorneys, finding that:

> [N]o genuine issues of material fact exists and judgment in this cause may be entered as a matter of law. The Court further finds that the [Estate] knew or should have known of its claim on June 1, 2000, when its attorney sent a letter to [Attorneys] advising them to put their attorney and insurance carrier on notice. The Court further finds that the instant claim filed on September 5, 2002, was beyond the two[-]year statute of limitations provided for legal malpractice

claims. Accordingly, [Attorneys] are entitled to judgment as a matter of law. *Id.* at 5.

The issue on appeal is whether the trial court erred by concluding that the statute of limitations had run on the Estate's legal malpractice claim against Attorneys. On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

▇▇ When a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as it did here, the method of our review is not changed. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

▇▇ The statute of limitations for a claim of legal malpractice is two years. *See* Ind.Code § 34–11–2–4 (1998); *Silvers v. Brodeur,* 682 N.E.2d 811, 813 (Ind.Ct. App.1997), *trans. denied.* Generally, a

cause of action accrues when a wrongfully inflicted injury causes damage. *Keep v. Noble County Dept. of Public Welfare,* 696 N.E.2d 422, 425 (Ind.Ct.App.1998), *trans. denied.* Legal malpractice actions are "subject to the 'discovery rule,' which provides that the statute of limitations does not begin to run until such time as the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another." *Id.* "For a cause of action to accrue, it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Id.* at 813–814.

■ The Estate argues that the statute of limitations did not begin to run until November 13, 2000, when the trial court granted summary judgment to the Tavern on the Estate's claim. According to the Estate, there was no certainty of an injury resulting from the release until summary judgment was granted because the law on releases and the effect of general releases was in a state of change during the 1990's. Attorneys argue that the language of the release was clear and unambiguous, and, as a result, the Estate was aware of its claim and that the statute of limitations started to run at least as early as June 1, 2000, when the Estate's attorney sent a letter to Attorneys regarding the release.

We addressed a similar issue in *Basinger v. Sullivan,* 540 N.E.2d 91 (Ind.Ct.App. 1989). There, the plaintiffs' attorney filed a timely proposed medical malpractice complaint seeking the opinion of a medical review panel. *Id.* at 91–92. After obtaining a favorable opinion from the medical review panel, the plaintiffs had ninety days to file a complaint against the physician, but the plaintiffs' attorney missed the filing deadline. *Id.* at 92. On July 5, 1984, the attorney met with the plaintiffs and informed them of the missed deadline. *Id.* However, the attorney advised the plaintiffs that he could still file a declaratory judgment action against the physician. *Id.* The plaintiffs authorized the attorney to proceed with the action, but the trial court granted summary judgment to the physician on January 2, 1985. *Id.* The plaintiffs brought a legal malpractice suit against the attorney on August 21, 1986. *Id.* The trial court granted summary judgment to the attorney because the complaint was filed outside of the statute of limitations. *Id.*

On appeal, the plaintiffs argued that the action did not accrue until January 2, 1985, because they suffered no damages until then. *Id.* at 92–93. We disagreed, holding that "[t]he argument confuses the distinction between the occurrence of damage and the amount of the damage." *Id.* at 93. As an example, we noted the following:

Where legal malpractice is claimed for an attorney's failure to commence an action within the period of limitations it is generally held that one of the necessary ultimate proofs for a recovery of damages is that a recovery would have been had if the suit had been properly brought. Can it then be contended that the limitation period does not commence to run on the attorney's negligence until plaintiff's right to recovery on the original claim has been judicially established? Clearly, the answer is no. To permit such reasoning would for all practical purposes preclude the statute from ever commencing to run.

*Id.* (internal citations omitted). We concluded that:

The injury and the damage (whatever it may be) occurred to ·[the plaintiffs'] chose in action against the physician when the limitation period expired without suit having been commenced. At that point the value, if any, of the chose

in action was damaged and injury occurred. Without question the limitation period then began to run at least by July 5, 1984 when [the plaintiffs'] were notified that this had occurred.

*Id.* at 93–94. Consequently, we held that the statute of limitations began to run at least when the plaintiffs were notified that their attorney had missed the filing deadline, not when the trial court granted summary judgment on the plaintiffs' declaratory judgment action.

Likewise, here, the Estate's argument confuses the distinction between the occurrence of damage and the amount of the damage. The injury and damage occurred in May 1999 when the Estate was advised to sign the general release. The Estate discovered that it "had sustained an injury as the result of the tortious act" of Attorneys at least by June 1, 2000, when the Estate's counsel sent Attorneys a letter stating:

It is in the Estate's best interest that we address this matter directly and quickly. We feel that [the Tavern's counsel's] demand for dismissal is appropriate and should be done in light of the current Indiana laws on releases. This action will deprive the dependents and Estate of their claim against the tavern and its owners. Please contact us or have your attorney or insurance carriers contact us as soon as possible so that we can discuss this matter.

Appellant's Appendix at 34–35. Thus, the injury and damage were ascertainable at least in June 2000.

The Estate argues that the state of release law in Indiana at the time made it uncertain whether the release applied to its claims against the Tavern. In 1992, our supreme court abrogated the "release rule," which generally held that the "release of one joint tortfeasor operate[d] as a release of all other tortfeasors." *Huffman*

*v. Monroe County Cmty. Sch. Corp.,* 588 N.E.2d 1264, 1266 (Ind.1992). Our supreme court held that a release should be interpreted in the same manner as any other contract document. *Id.* at 1267. Although the state of release law underwent some transformation in the 1990's, when the Estate sent the June 2000 letter to Attorneys, we had already addressed the issue of whether a release like the one at issue here barred other claims and held that it did. *See, e.g., Stemm v. Estate of Dunlap,* 717 N.E.2d 971, 976 (Ind.Ct.App. 1999), *reh'g denied; Dobson v. Citizens Gas and Coke Utility,* 634 N.E.2d 1343, 1345 (Ind.Ct.App.1994). It was reasonably clear at least as of June 1, 2000, that the Estate had been damaged by Attorneys' alleged negligence. Consequently, the statute of limitations began to run at least as of June 1, 2000, and the Estate's September 5, 2002 complaint against Attorneys was filed outside of the two-year statute of limitations. The trial court did not err by granting Attorneys' motion for summary judgment on this basis. *See, e.g., Basinger,* 540 N.E.2d at 94.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Attorneys.

Affirmed.

MATHIAS, J., and VAIDIK, J. concur.